UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERK STREET ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRAVO PERSONAL CARE LA LLC, et al., <br><br> Defendants. | Case No.  24-cv-08841-RFL <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 76 |

Berk Street Enterprises, Inc. (operating under the trademark Bravo Personal Care Services) filed this action against former employee Lonnie Govan-Mendoza and the company he founded, Bravo Personal Care LA LLC.  Berk Street alleges that it initially allowed Govan-Mendoza to use its mark on the belief he would operate in Los Angeles, but quickly withdrew permission after learning he planned instead to compete with Berk Street in Northern California. Accordingly, Berk Street contends Defendants infringed upon its trademark while using its trade secrets and poaching its clients.  Govan-Mendoza was enjoined from using the name Bravo Personal Care and since changed his company's name.  The Clerk entered default against Bravo Personal Care LA, and Govan-Mendoza is proceeding without the benefit of counsel.  Now, Berk Street moves for partial summary judgment as to Govan-Mendoza's liability under the complaint's first and third causes of action: trademark infringement in violation of 15 U.S.C. § 1114, and unfair competition in violation of 15 U.S.C. § 1125.  For the reasons explained below, Berk Street's motion is **GRANTED**.[1]

---

[1] Govan-Mendoza objects to the consideration of some evidence.  As none of the objected to material is considered in ruling on this motion, the objections are overruled as moot.

The analysis for both claims is substantively identical as both are based on alleged infringement of a registered mark. *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1245 (9th Cir. 2022) (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 n.8 (9th Cir. 1999)).  As a result, Berk Street must show (1) a protectible ownership interest in the mark and (2) a likelihood of consumer confusion from Govan-Mendoza's use of the mark. *See id.* (citations omitted).  Berk Street has a protectable ownership interest in "Bravo Personal Care Services" as it registered the mark prior to Govan-Mendoza's first use, and he does not contest proof of registration.  (*See* Dkt. No. 102 at 19; Dkt. No. 103 at 14; *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citation omitted).)[2]

The analysis therefore turns to whether there is a likelihood of consumer confusion from Govan-Mendoza's use of the mark.  This requires considering the non-exhaustive factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979): "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Lodestar*, 31 F.4th at 1252 (citation omitted).  These factors are "fluid," so a plaintiff "need not satisfy every factor, provided that strong showings are made with respect to some of them." *Pom Wonderful*, 775 F.3d at 1125 (citation omitted).  The fact intensiveness of trademark cases frequently precludes summary judgment, although courts "have not hesitated" to grant summary judgment if there is no genuine dispute of material fact. *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024) (citations omitted).  To be entitled to summary judgment, Berk Street must show that any reasonable jury would find confusion "'probable,' not merely 'possible.'" *See Lodestar*, 31 F.4th at 1261 (citation omitted).

***Strength of Mark.*** "Bravo Personal Care Services" is at least a suggestive mark.  As bravo is a shout of approval, it "requires a mental leap from the mark to the product." *See*

---

[2] All citations to page numbers in filings on the docket refer to ECF pagination.

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1033 (9th Cir. 2010) (citation omitted).  Accordingly, Berk Street makes at least a moderate showing on this factor.

***Proximity of Services.***  Berk Street and Govan-Mendoza are direct competitors, so their services are strongly related.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).  Both provide in-home healthcare services to veterans in Northern California.  (*See* Dkt. No. 102 at 40, 61–63; Dkt. No. 103 ¶¶ 4, 20–24, 61.)  It is immaterial that Berk Street also provides healthcare services to the elderly, as both still directly compete to serve veterans.  (*See id.*)

***Similarity of Marks.***  The marks are plainly similar.  The first three words are identical in both marks: Berk Street's mark is "Bravo Personal Care Services," while Govan-Mendoza's mark is "Bravo Personal Care LA."  Since those three words are the dominant part of the marks, the distinct final word is a "trivial distinction[]" that does not prevent the marks from being "overwhelmingly similar."  *See GoTo.com*, 202 F.3d at 1206.

***Evidence of Actual Confusion.***  Evidence of actual confusion is "persuasive proof that future confusion is likely."  *Sleekcraft*, 599 F.2d at 352 (citation omitted).  To determine how to weigh evidence of actual confusion, "the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion."  *Lerner & Rowe*, 119 F.4th at 720 (citation omitted).  While consumers are the focus of this inquiry, non-consumers are relevant if their confusion creates an inference of consumer confusion or influences consumers.  *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012).  Berk Street presents strong evidence of actual confusion.

Starting with consumers, Berk Street presents evidence that three of its clients asked whether Govan-Mendoza was operating a "branch[]" of Berk Street after he represented the two were associated.  (Dkt. No. 87 ¶ 6; Dkt. No. 103 ¶ 49.)  While Govan-Mendoza denies telling clients he was operating a branch and contemplates that the clients only said this after being "led by [Berk Street's] questions," he provided no evidence that these clients understood the two

3

services were distinct.  (*See* Dkt. No. 91 at 9, 122; Dkt. No. 102 at 54.)  Accordingly, after resolving factual disputes in favor of Govan-Mendoza, three consumers still believed he operated a branch of Berk Street.  Berk Street also shows that one of Govan-Mendoza's clients called Berk Street for a start date.  (Dkt. No. 103 ¶ 53; Dkt. No. 103 at 38.)  Govan-Mendoza does not dispute that this incident occurred, but characterizes it as one involving a "severely disabled veteran" who "mistakenly called" Berk Street after receiving a list of agencies from the VA. (Dkt. No. 91 at 49.)  Since Berk Street and Govan-Mendoza's consumers are disabled veterans, it would not make sense to discount that individual's confusion simply because of their disability.

Berk Street also presents relevant evidence of non-consumer confusion.  It shows that the VA emailed Berk Street about one of Govan-Mendoza's clients.  (Dkt. No. 103 ¶ 56; Dkt. No. 103 at 40; *see also* Dkt. No. 91 at 4–6.)  Since the VA is involved in authorizing or referring veteran clients for both services, the VA's confusion could "influence consumer perceptions and decision-making."  (*See* Dkt. No. 91 at 8; Dkt. No. 103 ¶ 54; *Rearden*, 683 F.3d at 1216.)  It is beside the point whether such errors were "solely the responsibility of the VA," as they are still indicative of consumer confusion.  (*See* Dkt. No. 91 at 3.)  Additionally, the California Department of Social Services investigated Berk Street over a complaint submitted against Govan-Mendoza's service, and an operations software company called Berk Street three times concerning Govan-Mendoza's clients.  (Dkt. No. 103 ¶¶ 57–58; Dkt. No. 103 at 42.)  As these are both "sophisticated nonconsumer[s]," their confusion serves as a reasonable proxy for consumer confusion.  *See Rearden*, 683 F.3d at 1216.

In sum, Berk Street shows numerous instances of actual confusion.  Though Govan-Mendoza disputes some other instances of confusion that were not outlined above, as well as how to characterize the outlined incidents, he does not dispute that these incidents occurred. They are strong evidence of actual consumer confusion considering Govan-Mendoza had three clients total.  (*See* Dkt. No. 102 at 20; *Lerner & Rowe*, 119 F.4th at 720.)

***Marketing Channels.***  "Convergent marketing channels increase the likelihood of confusion."  *Sleekcraft*, 599 F.2d at 353.  Govan-Mendoza did not advertise and solely received

4

clients from VA authorizations.  (*See* Dkt. No. 91 at 8; Dkt. No. 102 at 20–21, 41.)  Berk Street advertises through its website and social media, though it contends that all its veteran clients are referred or authorized by the VA.  (Dkt. No. 91 at 49, 54–85; Dkt. No. 103 ¶¶ 54, 61–63.)  Accordingly, with respect to veterans' care (which is Govan-Mendoza's only service), the VA essentially operates as a marketing channel since clients must receive authorization from the VA for a service to provide care.  This factor therefore weighs in favor of consumer confusion.

*Degree of Consumer Care.*  According to Berk Street, veterans "tend to simply defer to the VA's recommendation" on which service to choose.  (Dkt. No. 103 ¶ 63.)  By contrast, Govan-Mendoza contends veterans and their families are "acutely aware of the agencies they are communicating with and interviewing."  (Dkt. No. 91 at 50.)  As there is a genuine dispute of material fact over this factor, it is assumed to weigh against consumer confusion.

*Defendant's Intent.*  An intent to deceive is presumed if the defendant "adopted his mark with knowledge, actual or constructive, that it was another's trademark."  *Brookfield*, 174 F.3d at 1059.  Berk Street initially provided Govan-Mendoza with permission to use its mark.  (*See, e.g.*, Dkt. No. 102 at 92.)  However, Berk Street sent Govan-Mendoza an email on September 21, 2023 stating: "You are not authorized to use the name Bravo Personal Care.  The name is trademarked throughout California.  Change your name."  (Dkt. No. 103 at 32.)  Govan-Mendoza testified that he received this email.  (Dkt. No. 102 at 46.)  Separately, he stated that he did not start using the mark "Bravo Personal Care LA" in connection with his homecare services until December 15, 2023.  (*Id.* at 19; *see also* Dkt. No. 91 at 8.)  Accordingly, at the time Govan-Mendoza started using his mark, he had actual knowledge of Berk Street's trademark and his lack of permission to use it.  This factor therefore weighs in favor of consumer confusion.

*Likelihood of Expansion.*  This factor is "relatively unimportant" as Berk Street and Govan-Mendoza "already compete to a significant extent."  *See Brookfield*, 174 F.3d at 1060.

*Conclusion.*  Berk Street has shown that the two marks are overwhelmingly similar, there are numerous instances of actual consumer confusion between the two services, the services are direct competitors, and Govan-Mendoza had a presumed intent to deceive.  Even assuming

consumers exercise great care when choosing veterans' care services, no reasonable jury could find that confusion between the two services is less than probable.  *See Lodestar*, 31 F.4th at 1261.  Accordingly, this is "one of the rare trademark infringement cases susceptible to summary judgment."  *See Lerner & Rowe*, 119 F.4th at 726.  Berk Street's motion for partial summary judgment is **GRANTED**.  By **April 21, 2026**, the parties shall jointly submit a proposed schedule for the determination of damages and attorneys' fees.

   **IT IS SO ORDERED.**

Dated: March 31, 2026

RITA F. LIN
United States District Judge