UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERK STREET ENTERPRISES, INC., Plaintiff, v. BRAVO PERSONAL CARE LA LLC, et al., Defendants. | Case No. 24-cv-08841-RFL **ORDER AFTER BENCH TRIAL ON DAMAGES** Re: Dkt. No. 114 |

Berk Street Enterprises, Inc. accused former employee Lonnie Govan-Mendoza and the company he founded, Bravo Personal Care LA LLC, of trademark infringement. At summary judgment, Govan was found liable of trademark infringement in violation of 15 U.S.C. § 1114 and unfair competition in violation of 15 U.S.C. § 1125(a)(1). *Berk St. Enters., Inc. v. Bravo Pers. Care LA LLC*, No. 24-CV-08841-RFL, 2026 WL 879641, at *1 (N.D. Cal. Mar. 31, 2026). Berk Street dismissed all other claims against Govan. On June 2, 2026, a bench trial was held to determine Berk Street's damages. Under Federal Rule of Civil Procedure 52(a)(1), "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). This Order comprises those required findings of fact and conclusions of law.

## I. FINDINGS OF FACT[1]

Berk Street operates a home healthcare organization in the Bay Area called Bravo

[1] This Order also incorporates by reference the undisputed facts found at the liability phase in the summary judgment order. *Berk St.*, 2026 WL 879641, at *1–3. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall

Personal Care. (*See* Dkt. No. 129 ("Tr.") at 10; Dkt. No. 147-13 ("Govan Dep.") at 24–25, 84, 100, 215.)[2] Berk Street employed Govan between 2022 and 2023. (Govan Dep. at 76, 89, 95.) Govan also wanted to operate his own home healthcare business. (*Id.* at 76–82.) So Berk Street's president, Janet Phillips, provided Govan with permission to operate his own business in Los Angeles called Bravo Personal Care LA. (*Id.*) But Govan did not move to Los Angeles or operate Bravo Personal Care LA there. (*Id.* at 83–86.) Instead, he decided to operate his business in the Bay Area. (*Id.*)

Phillips demanded Govan cease use of the Bravo Personal Care mark. (Dkt. Nos. 147, 147-1.) Specifically, on September 21, 2023, Phillips emailed Govan: "You are not authorized to use the name Bravo Personal Care. The name is trademarked throughout California. Change your name." (Dkt. No. 147.) Govan received that email but did not stop using the mark because he thought Philips was "being vindictive." (Govan Dep. at 58–59.) Berk Street sent Govan a second cease and desist on October 11, 2024, but Govan continued to use the mark, and testified that he did not stop using the mark because he was "[t]rying to figure out what steps to take to use the name." (*Id.* at 60–62; Dkt. No. 147-1.) In response, Berk Street filed this lawsuit, and a preliminary injunction was entered prohibiting Govan's use of the mark on June 10, 2025. (Dkt. No. 46.) Three days later, Govan finally changed his business' name with the California Secretary of State. (Dkt. No. 147-12 at 5.) But the new name did not "populate[] throughout the Triwest System" until October 9, 2025. (*Id.*)

Govan used the Bravo Personal Care LA mark with three clients. (*Id.* at 1–2 (Resp. to Special Interrogatory No. 3).) He earned $201,905.36 from those clients and had $18,885 in expenses.[3] (*Id.* (Resp. to Special Interrogatories Nos. 3 and 4).) As a result, he earned profits of

---

be deemed conclusions of law.

[2] All citations to page numbers in filings on the docket refer to ECF pagination.

[3] This figure comes from Govan's interrogatory responses. His tax returns for 2023 and 2024 show over $50,000 in business expenses. (*See* Dkt. No. 147-19 at 1, 3.) Interrogatory responses do not constitute binding admissions that cannot be overcome through other evidence. *Victory Carriers, Inc. v. Stockton Stevedoring Co.*, 388 F.2d 955, 959 (9th Cir. 1968). But it is not clear

$183,020.36. (*See id.*)

In the first through third quarters of 2023, Berk Street's quarterly profits ranged between $72,939 and $98,743. (Dkt. No. 147-2 at 1, 3–4.) Bravo Personal Care LA started serving clients in December 2023. (Dkt. No. 147-12 at 1, 4.) Berk Street's quarterly profits declined to approximately $53,789 in the fourth quarter of 2023. (Dkt. No. 147-2 at 2.) Since then, they have ranged between $34,847 and $76,257. (Dkt. No. 147-3.) Phillips testified that she believed this decline in profits was caused by VA coordinators confusing the two agencies, her inability to hire a salesperson due to her attorney's fees in this case, and her attention being distracted by this matter. (Tr. at 15.) Phillips also testified that she expected future lost profits of $50,000 for two to three years because she will need to rebuild her referral system after this case distracted her. (*Id.* at 15–16.) However, Phillips provided no additional evidence linking the past or expected future decline in profits to Govan's use of Berk Street's mark. (*See id.*)

Berk Street began running advertisements for its services starting in September 2023. Specifically, it paid $1,646.24 to Meta in advertising fees between September 14, 2023, and August 14, 2024; and $652.09 to TikTok between October 18, 2023, and November 1, 2023. (*See* Dkt. No. 147-4 at 1–3; Dkt. No. 147-5 at 1–7.) Phillips testified that she ran these advertisements to differentiate Berk Street from Bravo Personal Care LA, and that she never advertised through Meta before Govan's use of Berk Street's mark. (Tr. at 16, 18.) While some advertisements ran before Govan's business started serving clients, they began running only a week before Phillips' first demand that Govan stop using the mark. (*See* Dkt. No. 147; Dkt. No. 147-4 at 2.) In December 2024, Berk Street contracted with an advertising consulting firm to improve its website. (Dkt. No. 147-6 at 1, 4.) The firm charged $12,000 for an initial 6-month term, with a potential renewal term. (*Id.*) There is no evidence that Berk Street agreed to renew the contract. Finally, on September 17, 2025, Berk Street agreed to advertise in a local

---

whether all the expenses claimed on Govan's taxes were attributable to those three clients, since he never explained how to evaluate the tax returns. (*See* Tr. at 40.) In fact, Govan testified that his expenses up to July 3, 2025, were $18,885. (*Id.* at 46.) Under these circumstances, the interrogatory response seems to most accurately reflect expenses for the three clients.

magazine. (Tr. at 19; Dkt. No. 147-7 at 1.) The agreement requires payment of $25,966.80 over 36 months. (*See* Dkt. No. 147-7 at 1.) Phillips testified that the website changes and magazine advertisements were similarly designed to differentiate Berk Street from Bravo Personal Care LA and give veterans more information about Berk Street. (Tr. at 18–20.)

Berk Street paid $90,850.50 in attorney's fees to litigate this matter up to trial. (Dkt. Nos. 147-8, 147-9.) Its attorney charged $292.50 per hour. (*Id.*) Its attorney has been practicing law for 35 years and previously taught trademark law at law school, and attested that the going rate for a lawyer of comparable skill in the Bay Area is in excess of $500 per hour. (Dkt. No. 115 ¶¶ 21–22; *see also* Dkt. No. 119 at 2 (treating the attorney's declaration as his direct examination at trial).). Berk Street conceded that 5 hours were spent on litigating non-Lanham Act claims. (Dkt. No. 115 ¶ 39; Dkt. No. 148 at 9.) After deducting that time, Berk Street's attorney's fees were $89,388.

## II. CONCLUSIONS OF LAW

### A. Damages

A trademark infringer is liable for "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).[4] This calculation is "subject to the principles of equity." *Id.* For instance, it is generally inappropriate to award a plaintiff both the defendant's profits and the plaintiff's own lost profits. *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994). While damages need not be "calculated with absolute exactness," they cannot be "remote and speculative." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407–08 (9th Cir. 1993) (citations omitted), *abrogated in irrelevant part by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (en banc). Berk Street proved $223,285.49 in damages.

Berk Street's past and expected future profits are insufficient to prove its lost profits. A plaintiff seeking to directly recover its own lost profits must make a "prima facie showing of

[4] A plaintiff can alternatively elect to receive statutory damages for counterfeiting. 15 U.S.C. § 1117(c). At trial, Berk Street elected to receive actual damages and profits. (Tr. at 54–55.)

reasonably forecast profits." *Lindy*, 982 F.2d at 1407 (citation omitted). "Proof of a decline in sales combined with evidence tending to discount the importance of other market factors, such as the evidence of positive business conditions . . . , can be sufficient to establish a causal connection between the plaintiff's decline in sales and the misconduct of the defendant." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1224 (9th Cir. 2010) (citation omitted). Berk Street did not present a reasonable forecast for profits nor evidence about other market factors. Phillips testified that she believed the decline in profits compared to the third quarter of 2023 was caused by Govan's infringement. But even before the infringement, Berk Street's quarterly profits varied by tens of thousands of dollars. Without additional evidence, deeming Govan's infringement as the cause of every quarter's entire decrease in profits is purely speculative.

Even if a plaintiff is unable to directly prove their lost profits, "a court may award damages based on defendant's profits on the theory of unjust enrichment." *Lindy*, 982 F.2d at 1407 (citation omitted). With this theory of damages, any income that Berk Street proved Govan earned in the relevant market is presumed to be the result of infringement. *Id.* at 1408; 15 U.S.C. § 1117(a). After that, it was Govan's burden to prove "all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Berk Street proved that Govan earned $201,905.36 from three clients. Govan used the infringing mark in the relevant market with all three clients, so that income is presumed to be the result of infringement. *Cf. Lindy*, 982 F.2d at 1408. Govan established $18,885 in expenses. Accordingly, Berk Street proved that it is entitled to $183,020.36 in lost profits.

Berk Street is also entitled to $40,265.13 in damages for corrective advertising. An award of corrective advertising costs is intended to make the plaintiff whole by "restor[ing] the value plaintiff's trademark has lost due to defendant's infringement." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995) (citation omitted). Prospective corrective advertising costs are awardable so long as they do not exceed the damage to the trademark owner's mark. *Id.* at 989. Given substantial consumer confusion between the two entities found based on the undisputed facts on summary judgment in the liability phase, corrective advertising was more likely than not

to be necessary to restore Berk Street's trademark. Berk Street did not conduct similar advertising campaigns prior to the infringement, so Govan's infringement was more likely than not to be the cause of this advertising. Additionally, there is no evidence that Berk Street's payments for future magazine advertisements will exceed the damage to its mark.

**B. Trademark Counterfeiting**

If a case involves a "counterfeit mark," a court "shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee." 15 U.S.C. § 1117(b). A mark is counterfeit if it is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. As a result, the "key inquiry is whether there is likelihood of confusion, not whether the products are seemingly identical." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1004 (9th Cir. 2023) (citing *State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720–22 (9th Cir. 2005)). Additionally, the original mark must be (1) registered on the principal register for the same goods or services; (2) in use; and (3) used without permission. 15 U.S.C. § 1116(d)(1)(B)(i); *State of Idaho*, 425 F.3d at 721. Trademark counterfeiting requires showing: (1) intentional use of a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods or services; and (4) a likelihood of confusion. *State of Idaho*, 425 F.3d at 721 (citation omitted).

Govan's mark was a counterfeit of Berk Street's mark. "Bravo Personal Care LA" is substantially indistinguishable from "Bravo Personal Care Services," particularly as the three identical words are the "dominant part of the marks." *See Berk St.*, 2026 WL 879641, at *2. Additionally, as already established, Govan's mark created a high likelihood of consumer confusion. *Id.* at *2–3. Next, Berk Street's mark is registered on the principal register for in-home personal care services. (Dkt. No. 147-17 at 10.) Govan's business provides those same services. (*See* Govan Dep. at 30.) Berk Street uses its mark. (*See, e.g.*, Tr. at 22–23, 32; Dkt. No. 147-6 at 1.) Finally, Govan did not have permission to use Berk Street's mark. (*See* Dkt.

Nos. 147, 147-1.)

Govan's use of a counterfeit mark constituted trademark counterfeiting. First, Govan intentionally used the counterfeit mark when operating his home healthcare service. (*See* Govan Dep. at 55–56.) Second, willful blindness is sufficient to show that a defendant knew the mark was counterfeit. 4 McCarthy on Trademarks and Unfair Competition § 30:94 (5th ed.) (citation omitted). Govan was at least willfully blind, as he knew the marks were overwhelmingly similar, received two notices telling him that he no longer had authorization to use the mark, yet deliberately took no steps to determine if Bravo Personal Care LA constituted a counterfeit mark that he had to stop using. *See id.* (citing, among other cases, *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)); *Y.Y.G.M.*, 75 F.4th at 1001 (applying willful blindness to contributory trademark infringement). Third, Govan used the counterfeit mark in connection with his sale of services. (*See* Govan Dep. at 55–56.) Finally, there was a likelihood of confusion. *Berk St.*, 2026 WL 879641, at *3.

Since Berk Street established trademark counterfeiting, it is entitled to treble damages and attorney's fees. *See* 15 U.S.C. § 1117(b). Govan has not shown that the "extremely narrow" exception for extenuating circumstances applies. *See Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997) (citation omitted); *Lindy*, 982 F.2d at 1409 (finding extenuating circumstances where infringer was unaware of the registered trademark). After trebling, Berk Street is awarded $669,856.47 in damages. Additionally, it is awarded $89,388 in attorney's fees. A rate of $292.50 per hour is entirely reasonable for a trademark litigator in the Bay Area, and the contemporaneous billing records submitted by Berk Street's attorney show a reasonable number of hours commensurate with the length of this case. Govan's pro se status does not justify decreasing this fee award.

### C. Injunctive Relief

Injunctive relief is the "remedy of choice for trademark and unfair competition cases." *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Where the infringing use is for a similar service, "broad injunctions are especially appropriate." *Id.* at 1181.

Normally, a party seeking a permanent injunction must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Y.Y.G.M.*, 75 F.4th at 1005 (citation omitted). In cases with an established trademark violation, the Lanham Act creates a "rebuttable presumption of irreparable harm." *Id.* (quoting 15 U.S.C. § 1116(a)).

Berk Street is entitled to a permanent injunction preventing future infringement. Since it established trademark infringement, it is presumed to be irreparably harmed. Govan has not rebutted this presumption. The only apparent harm to Govan would be caused by his need to cease unlawful conduct, and that is not considered hardship. *See Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *superseded by statute on other grounds*. Finally, avoiding consumer confusion is in the public interest. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993–94 (9th Cir. 2009).

However, the permanent injunction will be narrowed from the preliminary injunction. An injunction in a trademark case must be "narrowly tailored to the scope of the issues tried in the case." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (citation omitted); *see also Internet Specialties*, 559 F.3d at 993 ("The essence of trademark infringement is the likelihood of confusion, and an injunction should be fashioned to prevent just that."). The preliminary injunction prohibited Govan from using Berk Street's confidential HIPAA-protected information, but that is not directly tied to trademark infringement. As a result, that prong of the preliminary injunction will not be included in the permanent injunction.

## III. CONCLUSION

Govan is liable for $669,856.47 in damages plus $89,388 in attorney's fees, for a total of $759,244.47. Additionally, Govan; his agents, servants, employees, attorneys; and those persons in active concert or participation with them are **PERMANENTLY ENJOINED** from (1) using the trademarks "Bravo Personal Care," "Bravo," or any similar trademark; (2) representing that

Bravo Personal Care LA or any of his other businesses, if any, is a "branch" of Berk Street; or (3) implying that Bravo Personal Care LA or any of his other businesses are sponsored by, endorsed by or in any way associated with Berk Street. Berk Street may serve and file a bill of costs within 14 days after judgment is entered. *See* Civ. L.R. 54-1(a).

**IT IS SO ORDERED.**

Dated: July 21, 2026

RITA F. LIN
United States District Judge